No. 30,467.

Anna Nelson and Emma Nelson, as Guardians of Helen Nelson, a Feeble-minded Person, *Appellees*, v. Frank S. Nelson, *Appellant*.

(12 P. 2d 800.)

Opinion filed July 9, 1932.

*William J. Wertz, Vincent F. Hiebsch* and *Forest V. McCalley,* all of Wichita, for the appellant.

*Paul J. Wall, Carl I. Winsor* and *John E. Boyer,* all of 'Wichita, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to cancel a farm lease and to eject the tenant under the lease from the farm. Judgment was for plaintiff. Defendant appeals.

Some time in December, 1927, Nels Nelson died. He left considerable real estate, including the farm in question. His estate was left to his wife, Helen Nelson, for life, with remainder over to seven children, some of whom are the parties to this action. For some twenty-one years prior to 1927 Frank Nelson had farmed one quarter section, which was part of the estate. After the death of his father he continued to farm it. He had no lease. After the death of her husband Helen Nelson lived in Wichita with three daughters, two of whom are now her guardians. On April 25, 1928, appellant entered into a written lease with his mother for the farm in question. This lease was executed in the office of a real-estate firm in Wichita without the knowledge of any of the daughters with whom Mrs. Nelson was living. Within twenty-one days after the lease was signed Mrs. Nelson was adjudged feeble-minded in the probate court of Sedgwick county. Anna Nelson and Emma Nelson, her daughters, were appointed guardians. On the 21st of August, 1928, notice to vacate the premises was served on appellant. He refused to vacate. This suit was then filed by the guardians. The only issue involved is the cancellation of the lease and the right to possession. The case was tried with a jury acting in an advisory capacity. The jury answered special questions as follows:

"1. Was Helen Nelson, on the 25th day of April, 1928, at the time the lease in question was made, of such mind and memory as to enable her to know and understand the business in which she was engaged and the effect and the consequences of her action? A. Yes.

"2. Was the said lease signed by reason of undue influence brought to bear upon Helen Nelson at the time of the signing of the same? A. Yes.

"3. If you answer question No. 2 in the affirmative, state of what that influence consisted. A. Persuasion for personal gain."

On proper motion the trial court set aside the jury's answer to question No. 1 and made its own finding that Helen Nelson was on the 25th day of April, at the time the lease in question was made, of such mind and memory as to make her incompetent and unable to know and understand the business in which she was engaged, and the effect and consequence of her action in the signing of the lease. Judgment was rendered in favor of the appellees for immediate

possession of the farm and canceling the lease. From that judgment this appeal is taken.

Appellant urges two grounds of error. He points out that consent to the bringing of the action was not obtained by the guardians. This question was raised in the trial court and overruled and is urged here as error. He also argues that the evidence was insufficient to show that at the time the farm lease was executed Helen Nelson was of unsound mind to the extent that she was unable to know and understand the business in which he was engaged and the effects of her acts. To sustain the first ground he relies on R. S. 39-210. It is as follows:

"Every probate court by whom any such person is committed to guardianship may make an order for the support, care and safe-keeping of such person, for the disposition or sale of his personal property as may be found necessary, for the management of his estate, for the support and maintenance of his family and education of his children, out of the proceeds of such estate; to set apart and reserve for the payment of debts; and to let, sell or mortgage any part of such estate, when necessary for the purposes above specified."

Also, R. S. 39-211, which is as follows:

"Whenever the personal estate of any such person shall be insufficient for the discharge of his debts, the maintenance of himself and his family, or the education of his children, it shall be the duty of the guardian to apply by petition to the probate court by which he was appointed, praying authority to mortgage, lease or sell the whole or so much of the real estate of such person as shall be necessary to supply the deficiency, except his homestead."

Also, R. S. 39-220, which reads as follows:

"When the court shall order a lease or mortgage of any real estate, no deed or instrument of writing shall be executed for that purpose until the court shall have approved the agreement made by the guardian under such order."

Appellant argues that these sections place the care and management of the estate of a feeble-minded person in the hands of the probate court and that as important a matter as the filing of a suit to set aside a lease cannot be entered into by the guardian of such a person without first obtaining the permission of the probate court so to do.

Appellee cites another section of the statutes which has to do with the duties of guardians in handling estates of feeble-minded persons. It is R. S. 39-209, and is as follows:

"It shall be the duty of every such guardian to prosecute and defend all actions instituted in behalf of or against his ward, to collect all debts due or becoming due to his ward, and give acquittances or discharges therefor, and

to adjust, settle and pay all demands due or becoming due from his ward, so far as his effects and estate will extend, as hereinafter provided."

Clearly this gives the guardian power to prosecute and defend all suits instituted in behalf of or against his ward. The sections quoted and relied on by appellant provide for the receiving of the consent of the probate court in order for the guardian to have authority to convey, mortgage or lease any of the real estate belonging to his ward. The action in this case does not have any of these objects in view. The judgment which was rendered did not diminish in any respect the estate of Mrs. Nelson in the real estate in question. The authorities cited by appellant on this point are all cases where the guardian was taking action which would operate to diminish the estate which his ward held in the real estate.

The general rule is stated in Corpus Juris as follows:

"Leave of court is not necessary to enable a guardian to sue in behalf of his ward, unless judicial authorization to bring suit is required by statute." (28 C. J. 1247.)

The text cites *Bennett v. Bennett,* 65 Neb. 432, 91 N. W. 409. In that case, in speaking of the authority of a guardian to bring a suit similar to the one under consideration here, the court said:

"We find nothing in the statutes making such leave of court necessary, and are not impressed with the reasons for requiring it which have been urged. Section 23, chapter 34, Compiled Statutes, makes it the duty of the guardian to represent the ward in all legal proceedings, and section 26 puts him in the position of an administrator with respect to inventorying, getting possession of and accounting for the ward's estate. If he brings suits recklessly, and improvidently, he may doubtless be removed, or charged with expense in his accounts." (p. 435.)

See, also, *Bilby v. Noble,* 106 Okla. 302, 234 Pac. 198.

We have concluded that from all the statutes heretofore quoted it was not necessary for the guardians to secure the permission of the probate court to bring a suit such as this.

The other question urged by appellant is that there was not sufficient evidence to sustain some of the findings of fact reached by the trial court. This court does not weigh the evidence upon which findings by trial courts are based. These findings are disturbed by this court only when there is no substantial evidence to sustain them. (*Fair v. Golden Rule Refining Co.,* 134 Kan. 623, 7 P. 2d 70, and cases cited.) Moreover, an examination of this record discloses that Helen Nelson often did not know her own children; that she

wandered away from home and became lost; that she did not know or recognize friends or neighbors who saw her almost daily; that she required constant watching and care; that she had almost a total loss of memory; that she was easily influenced; that she would come into the room in her nightgown in the presence of strangers; that she would turn on the gas without lighting it; that she made contradictory statements as to whom she wanted on the farm; that she repeatedly asked the same questions over and over again; that she could not hold a connected conversation; that she was more interested in the eating of an ice-cream cone during the trial in probate court to determine her mental capacity than she was in the proceedings; that she did not even realize her husband was dead.

It can hardly be said that this did not constitute substantial evidence that Mrs. Nelson was without sufficient capacity to make the lease in question.

The judgment of the district court is affirmed.